UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **LONNIE KEVIN CUTTILL,** ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | Case No. 09-2007 |
| **JOHN POTTER,** ) | |
| **Postmaster General,** ) | |
| **Defendant.** ) | |

# O R D E R

In January 2009, Plaintiff Lonnie Cuttill, acting *pro se*, filed Pro Se Complaint Against Employment Discrimination, Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 (#4), against Defendant John Potter, Postmaster General of the United States Postal Service, alleging violations of federal law.  In June 2009, Plaintiff filed Amended Complaint 09-2007 (#52).  Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In May 2010, Defendant filed a Motion for Summary Judgment (#54).  In July 2010, Plaintiff filed his Response to Defendant's Motion for Summary of Judgment (*sic*) (#81).  After reviewing the parties' pleadings, memoranda, and evidence, this Court **GRANTS** Defendant's Motion for Summary Judgment **(#54)**.

## I. Legal Standard

The Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial.  *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994).  The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists.  *Celotex,* 477 U.S. at 323.

The Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex*, 477 U.S. at 322-23. Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmoving party must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts, and instead must present definite, competent evidence to rebut the motion. *Wolf v. Nw. Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001); *Albiero*, 246 F.3d at 932.

The Court is cognizant of its special obligation with respect to a *pro se* litigant. *See Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982). The Seventh Circuit has defined a court's role as insuring that the claims of a *pro se* litigant are given "fair and meaningful consideration." *Madyun v. Thompson*, 657 F.2d 868, 876 (7th Cir. 1981). Furthermore, a *pro se* plaintiff is entitled to a great deal of latitude where procedural requirements are concerned and is entitled to provide supporting evidence. *Haines v. Kerner*, 404 U.S. 519, 519-20 (1972). When responding to a summary judgment motion, a *pro se* plaintiff need not comply with the specific requirements described in Rule 7.1(D) of the Local Rules for the Central District of Illinois (*see* CDIL-LR 7.1(D)(6)). Nevertheless, to avoid summary judgment, he must respond with admissible evidence setting forth specific facts showing that there is a genuine issue for trial. *Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir. 2001).

**II.  Background**

Determining what proposed facts are disputed has been cumbersome in this case because Plaintiff's "responses" to Defendant's proposed undisputed facts were not very responsive. For example, Defendant's Paragraph 16 states, "Decatur Postal customer service supervisor Ashley Scogin applied the Postal Service rules including the Mandatory Informational Service

Talk after it was issued in the summer of 2007 that stated leave without pay requests requiring 10 hours or less of leave without pay generally would be granted." (#54, ¶ 16.)  Plaintiff disputed this proposed fact because the policy changed in the MIST is "a rule that contradicts national regulations" (#81, p. 8), and therefore when Scogin followed the policy in the MIST, "direct violations of postal regulations . . . [were] used to validate retaliatory actions directed towards Cuttill" (#81, p. 10).  Thus, Plaintiff does not dispute that Defendant applied Postal Service rules including the policy in the MIST.  Instead, he argues that these rules violate postal regulations, an issue that is not before the Court.

Another example is seen in Defendant's Paragraph 22:  "Scogin on April 16, 2008, denied Cuttill's April 14, 2008, request for 24 hours of leave without pay with the stated reason 'no other leave available.'" (#54, ¶ 22.)  Plaintiff disputed this fact by stating, "Scogin denied the leave request though being in the Navy Reserve and knowing that Cuttill's wife was active Navy." (#81, p. 11.)  Again, Plaintiff does not actually dispute Defendant's statement.  Instead, he tries to show that Scogin should have granted the request because of Scogin's background in the Navy.

Despite the difficulty of understanding Plaintiff's responses, the Court has determined the undisputed material facts.  At relevant times, Plaintiff worked as a carrier technician for the Decatur Post Office; his job began around February 1986.  Richard Glass was Postmaster at the Decatur Post Office, Ray Colclasure was Acting Postmaster, and Ashley Scogin was a supervisor.

In his complaint, Plaintiff alleged that Defendant violated Title VII by retaliating against him for filing a claim with the Equal Employment Opportunity Commission.  Plaintiff engaged in this EEO activity on May 14, 2007, and in early July 2007.  Also in 2007, Glass prepared the Mandatory Informational Service Talk document (hereinafter "MIST").  The MIST set forth a new policy providing that postal employees should not expect to automatically take leave without pay (hereinafter "LWOP") after they have exhausted their authorized annual leave for a given year.  The policy also provided that requests for ten hours or less of LWOP would be

3

granted, but requests over ten hours would no longer be routinely approved. Approval or disapproval of LWOP is based upon the employee's needs, the needs of the post office, and the cost to the postal service. These factors vary from day to day. The MIST was to be read to all postal employees at all of the Decatur, Illinois post offices, and it was read to Plaintiff in August 2007.

From May 1, 2007, to July 31, 2008, Plaintiff filed 217 leave requests. Of these requests, 167 were for LWOP, for a total of 501.98 hours. Five of these LWOP requests were denied, and Plaintiff claims that two of these were denied in retaliation for his EEO activity. At the time of these denials, Plaintiff had only 1.53 hours of annual leave remaining for the rest of 2008.

Plaintiff's first request, dated April 14, 2008, was for 24 hours LWOP from May 1 to May 3, 2008, for the stated reason, "meet wife for exchange." Scogin denied this request for the stated reason "no other leave available." Plaintiff's second request, dated June 16, 2008, was for 16 hours LWOP from August 8 to August 9, 2008. Plaintiff gave no reason for this request. Scogin denied this request for the stated reason "LWOP not available for leave extension."

After his employer denied his second request for LWOP, Plaintiff filed a grievance with the union. The union steward, April Wolpert, spoke with acting supervisor Nick Pallone who stated that Plaintiff's request for 16 hours LWOP from August 8 to August 9, 2008, would be granted. According to Ms. Wolpert, the request was granted because the postal service was afraid of Mr. Cuttill filing more EEO claims. Defendant contends that because the request for LWOP in August was ultimately approved, it is no longer part of Plaintiff's retaliation claim. However, for the purposes of this motion, the Court will consider both leave requests.

Scogin reviewed the leave requests at issue along with all other leave requests from Decatur employees. He testified that he applied postal service rules and the policy established in the MIST to all requests, and treated Plaintiff's requests the same as he treated every other

employee's requests.  Plaintiff attempts to challenge this fact, but he provides only conclusory statements about Scogin's actions, and gives no evidence to support his theory of Scogin's approach to his requests.

Plaintiff contends that three employees were treated better in regard to requests for leave during the relevant time period.  The first employee submitted seven leave requests for a total of 108.8 hours of LWOP, and all the requests were approved.  The second employee submitted 49 leave requests for a total of 706.98 hours of LWOP, and all were approved, although one was changed to sick leave.  This employee was subsequently terminated for failure to maintain a regular work schedule.  The third employee submitted four leave requests for a total of 2.61 hours of LWOP; all were granted.

### III.  Discussion

A plaintiff can establish a prima facie case of retaliation using either the direct method or the indirect method.  Under the direct method, the plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the first two elements.  *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).  Under the indirect method, the plaintiff must establish the same first two elements as under the direct method, and in addition must show that he was treated less favorably than a similarly-situated employee.  *Id.* at 786-87.

Plaintiff and Defendant do not dispute that Plaintiff's EEO activity in May and July of 2007 constituted protected activity.  Thus, Plaintiff has satisfied the first element of his claim under either method.

Regarding the second element, an adverse employment action consists of "only those employer actions that would have been materially adverse to a reasonable employee." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  A materially adverse action is one that might have dissuaded a reasonable employee from making or supporting a charge of discrimination.  *Id.* at 68.  This standard exists in order to separate significant from trivial harms.

*Id.* Significant harms include acts such as termination, demotion accompanied by a decrease in salary, or a material loss of benefits or responsibilities. *Crews v. City of Mt. Vernon*, 567 F.3d 860, 869 (7th Cir. 2009). Trivial harms include petty slights and minor annoyances that often occur at work and that all employees experience. *White*, 548 U.S. at 68. An adverse employment action must be more than a "mere inconvenience." *Crady v. Liberty Nati'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993).

Defendant argues that Plaintiff cannot establish that he suffered an adverse employment action. Plaintiff responds that his denied LWOP requests rise to the standard of materially adverse harm.

The Court agrees with Defendant. In general, denial of a leave request is a mere inconvenience to an employee and does not constitute significant harm. *See, e.g., Dalzell v. Astrue*, No. 2:05cv755, 2008 WL 598307 (W.D. Pa. Mar. 3, 2008) (unreported). This is particularly true when considering Plaintiff's two denied requests in the context of his entire record of 167 requests for LWOP. *See Crews*, 567 F.3d at 869 (stating that not everything that makes an employee unhappy is considered an adverse employment action).

Because Plaintiff cannot establish that he suffered an adverse employment action, he cannot establish a prima facie case of retaliation under either the direct or indirect method. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

Plaintiff also seems to imply in his brief that the policy change described in the MIST document in itself constituted retaliation against him. Plaintiff has not developed this argument, nor did he raise it in the complaint, the amended complaint, or the EEO charges. Therefore, the Court will not consider this argument.

### IV.  Conclusion

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment **(#54).**  This case is terminated.

ENTERED this 26th day of August, 2010.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE